```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

MELISSA PHILLIPS,                )
                                 )
        Plaintiff,                )
                                 )
v.                               )    Case No. CIV-17-474-RAW
                                 )
RONALD YEUBANKS,                 )
                                 )
        Defendant.                )
```

### FINDINGS AND RECOMMENDATION

This matter comes before the Court on Plaintiff's Application for Default Judgment (Docket Entry #12). This Application was referred to the undersigned on January 8, 2019 for "hearing and Findings and Recommendation" by United States District Judge Ronald A. White, the judge presiding over this case.

On January 24, 2019, this Court conducted a hearing on Plaintiff's Motion. Counsel for Plaintiff appeared and Defendant did not. Originally, the action was brought by Plaintiff on December 19, 2017 acting *pro* se. Although not entirely a picture of clarity, Plaintiff alleged in the Complaint that she and Defendant entered into an agreement for Plaintiff to assume a contract for the rental and sale of real property should her godchildren default until they fully paid for the property. Plaintiff alleged that Defendant breached the contract by allowing "someone else to compete for the contract when the goddaughter was

1

not even in default trying to steal the contract they had out from under them." Plaintiff also alleged Defendant breached a contract by forcing her to sign under duress, failing to evict squatters form the property, lying about the house having insurance on it and refusing to pay for insurance on the home.

In a third count, Plaintiff again alleged a breach of contract by Defendant by wrongfully declaring Plaintiff's godchildren in default and trying to solicit another woman to enter into a contract on the property and voiding the agreement with the godchildren.

Plaintiff also alleged that Defendant slandered and defamed her "to her godchildren and other people" by stating she did not have a contract with Defendant and making "derogatory comments about [P]laintiff." She alleged Defendant "slander[ed] her right to the property by allowing another person to believe with his deceptive actions that he did not have a contract with the property."

Plaintiff alleged Defendant engaged in a battery against her by acting "very inappropriately flirtatious" and touching her, causing her to push him off of her. In another meeting with Plaintiff, Defendant put his hands on her, touched her breast, and grabbed her wrist when she attempted to push him away.

Plaintiff claims Defendant intentionally inflicted emotional

2

distress upon her by threatening to turn off the gas to the home in attempting to get her godchildren to pay more money to lease the property. She also asserted a claim for negligent infliction of emotional distress in the manner in which Defendant treated she and her godchildren "at a time of severe grief of the loss of her friend and children grieving their mother, [and Plaintiff's] lifelong friend."

Plaintiff also brought a claim for fraud against Defendant, alleging that she signed an agreement to pay the gas bill if the squatters occupying the house were evicted by Defendant. Defendant allegedly asked the squatters to pay the gas bill and suggested that they would get more time before they would be required to leave. Plaintiff claimed "[i]t is fraud to try to get money from multiple parties for the same utility bills."

In her final claim, Plaintiff contends Defendant engaged in sexual harassment and discrimination in violation of the Fair Housing Act by voiding the contract with Plaintiff and Plaintiff's godchildren. The violations were allegedly manifested in Defendant's flirting, unwanted touching, groping, and engaging in inappropriate comments concerning dating Plaintiff. Plaintiff sought "punitive, compensatory and general damages in the amount of 300 thousand dollars requested or as jury sees fit" as well as injunctive relief.

On June 27, 2018, after Plaintiff filed a motion seeking a default judgment, the Clerk of this Court entered an Entry of Default.  In doing so, he stated that the record indicated Defendant was served with the Summons and Complaint on January 3, 2018 and had failed to plead or otherwise defend as directed by the Summons.  He, therefore, granted Plaintiff's Motion for Entry of Default in accordance with Fed. R. Civ. P. 55(a).

Thereafter, Plaintiff failed to seek a default judgment from the Court, precipitating the entry of an Order on November 16, 2018 requiring Plaintiff to show cause in writing and apply for a default judgment or risk the dismissal of the case for the failure to prosecute.  On December 7, 2018, Mr. Caleb Salmon entered an appearance as counsel for Plaintiff, responded to the show cause order, and filed a Motion for Default Judgment.  On January 8, 2019, United States District Judge Ronald A. White, who presides over this case, referred the subject Motion to the undersigned for a hearing and the entry of Findings and a Recommendation.

At the hearing set and conducted by this Court, Plaintiff testified that Defendant approached her about assuming the contract in November of 2017.  Defendant lived outside of Coffeyville, Kansas and Plaintiff was traveling to Kansas for a funeral so she met with Defendant in his office.  No harassment allegedly occurred at that time.  Defendant asked Plaintiff to

4

assume the contract on the house if her godchildren defaulted on payments. The agreement between Plaintiff and Defendant resulted.

In subsequent meetings with Defendant, Plaintiff stated she was "uncomfortable." Defendant was angry because he could not get into the house. He became flirtatious with Plaintiff and her godchildren. After the parties met to discuss revisions to the agreement and to sign it, Plaintiff testified that Defendant touched her breast and grabbed her bottom. Defendant made comments about her appearance, slapped Plaintiff's 21 year old goddaughter on the bottom.

After the godchildren's mother died, Plaintiff testified they began have problems with Defendant over the agreement. Because she felt uncomfortable and believed Defendant was trying to get out of the agreement with she and her godchildren, Plaintiff started recording her encounters with Defendant. In a subsequent meeting, Plaintiff stated Defendant came up behind her and tried to touch her bottom. When she moved away, he grabbed her wrist.

Other recordings indicated (1) Defendant insisted on Plaintiff "liking him" in order to avoid the contract being awarded to another potential renter/purchaser; (2) Defendant continued his efforts to touch Plaintiff, asked her out, and stated it was not right for Plaintiff to be single; (3) Defendant told Plaintiff that if she was opposed to going out with him, she should go to

5

court over the contract; (4) Defendant would not abide by the contract with Plaintiff and her godchildren unless Plaintiff went out with him; and (5) in calls between Defendant and Plaintiff concerning the status of the contract, Defendant reiterated that there was a competition for the contract on the property because the other woman seeking the property "wanted to date him."

Plaintiff provided evidence that she had attended a licensed professional counselor. The counselor believed Plaintiff was making progress before her encounters with Defendant, indicating Defendant's actions caused Plaintiff anxiety, depression, and stomach problems. Plaintiff testified that she suffered from physical symptoms as a result of Defendant's actions, including nausea, nervousness, and stress because Plaintiff was worried about what Defendant might do and because she was concerned about her godchildren, particularly because Defendant threatened to shut off the gas. The increased stress required changes to Plaintiff's medication.

Plaintiff requested that she be awarded $150,000.00 in actual damages against Defendant, representing pain and suffering and the intentional infliction of emotional distress and $150,000.00 in punitive damages. The calculation of the award was based upon Plaintiff's perceived valuation of the properties held by Defendant.

It is clear that Defendant is in default of answering or otherwise responding to the Complaint as required by law. Fed. R. Civ. P. 55(a). "[W]hen a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages." United States v. Craighead, 176 Fed. Appx. 922, 924-25 (10th Cir. 2006)(quoting American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859, 864 (8th Cir. 2001). Further, "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).

Plaintiff's inarticulate Complaint and her presentation of evidence on damages makes it difficult to directly attribute damages to a breach of contract or slander of title, or battery or harassment under the Fair Housing Act. It is clear that Plaintiff seeks damages for more amorphous items such as pain and suffering and emotional distress at a time Plaintiff was seeking and obtaining professional assistance in connection with the intentional infliction of emotional distress claim. There is little doubt from the record made at the hearing that Defendant

7

was abusive and threatening to Plaintiff and Plaintiff's family. The intimidation brought by Defendant give support for the compensatory damages sought in the full amount of $150,000.00.

Punitive damages are more problematic in conjunction with a default judgment. Okla. Stat. tit. 23 § 9.1 governs claims for punitive damages. It allows an award of punitive damages based upon several enumerated factors such as: the seriousness, profitability, duration, concealment, and awareness of the misconduct; and the attitude and financial condition of the defendant. Okla. Stat. tit. 23 § 9.1(A). Categories of the defendant's conduct are created which limit punitive damages to $100,000 where the defendant has acted in reckless disregard of the rights of others and to $500,000 where the conduct is intentional and with malice. Id. at §§ 9.1(B) and (C). "[P]unitive damages may be awarded if the [trier of fact] finds by clear and convincing evidence the defendant acted in reckless disregard or acted intentionally and with malice." Gowens v. Barstow, 364 P.3d 644, 652 (Okla. 2015) (citing OUJI—Civil § 5.6).

In this case, the conduct of Defendant was sufficiently egregious to warrant an award of punitive damages in the amount of $20,000.00 as he certainly acted with intent and malice. An award

8

in excess of this amount would tend to be unsupportable given the evidence presented at the hearing.

IT IS THE RECOMMENDATION OF THE UNDERSIGNED that judgment be entered in Plaintiff's favor in the total amount of $170,000.00.

The parties are herewith given fourteen (14) days from the date of the service of these Findings and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendation within fourteen (14) days will preclude appellate review of the findings made herein.

IT IS SO ORDERED this 13th day of September, 2019.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma